IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

J.M.P.,1

                    Plaintiff,

        Vs.                                                No. 21-2380-SAC

KILOLO KRJAKAZI,
Acting Commissioner of Social Security,

                    Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant

Commissioner of Social Security ("Commissioner") that denied the claimant J.M.P.'s

Title II application for disability insurance benefits and his earlier filed Title XVI

application for supplemental security income. His applications alleged a disability

beginning January 14, 2018. Listing depressive, bipolar, and related disorders, along

with personality disorders, the agency determinations denied his applications initially

and on reconsideration. After a requested hearing before the administrative law judge

("ALJ") at which J.M.P. and his mother testified, the ALJ issued his 14-page decision

finding that J.M.P. was not disabled from January 14, 2018, through the date of his

decision of April 8, 2021. The Appeals Council denied the plaintiff's request for

review. Consequently, the ALJ's decision stands as the Commissioner's final decision

_____

1 The use of initials is to preserve privacy interests.

for purposes of judicial review. The parties to this proceeding have had an opportunity to brief this matter in its entirety. Having reviewed the record and researched the relevant law, the court is ready to rule.

## STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See *Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). This standard of review is set forth in 42 U.S.C. § 405(g) and provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The Supreme Court has summarized the relevant holdings behind this standard in this way:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has

2

> said, is "more than a mere scintilla." *Ibid.*; *see, e.g., Perales*, 402 U.S. at 401,
> 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—
> "such relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See*
> *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

*Biestak v. Berryhill*, ---U.S.---, 139 S.Ct. 1148, 1154 (2019). In using this standard, a

court examines the whole record, including whatever in the record fairly detracts

from the weight of the Commissioner's decision, and decides whether substantial

evidence supports the decision. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). A

court, however, may not reverse the Commissioner's choice between two reasonable

but conflicting views, even if the court would have chosen differently assuming a *de*

*novo* review. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

The court reviews "only the sufficiency of the evidence, not its weight." *Oldham v.*

*Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

**PROCEDURAL BACKGROUND and ALJ's DECISION**

      In his disability report dated January 8, 2019, J.M.P. listed these mental

impairments as limiting his ability to work:   Intermittent Explosive Disorder,

Antisocial Personality Disorder, Narcissistic Disorder, Persistent Depressive Disorder,

and Bipolar Disorder. ECF# 4-7, p. 10. His medical records reflect a history that

includes alcohol abuse, aggressive behavior toward parents, and legal issues from

both.

      The ALJ employed the following five-step sequential evaluation process

(20 C.F.R. §§ 404.1520 and 416.920) for determining a disability application. ECF# 4-3, pp. 14-15. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). The first step looks at whether claimant has engaged in substantial gainful activity, and the second looks at whether the claimant has a medically determinable impairment that is severe" or a combination of impairments which are severe. At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ at step four determines the claimant's residual functional capacity ("RFC") and then decides whether the claimant has the RFC to perform the requirements of his or her past relevant work. The last step has the ALJ determine whether the claimant can do any other work considering his or her RFC, age, education and work experience. For steps one through four, the burden rests with the claimant to prove a disability that prevents performance of past relevant work, but the burden shifts to the Commissioner at step five. *Wilson*, 602 F.3d at 1139; *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

In his decision, the ALJ found that J.M.P. had engaged in substantial gainful employment since his alleged onset date of disability. ECF# 4-3, p. 16. The ALJ, however, did not develop this analysis or rely upon it to deny the plaintiff's application. Instead, the ALJ proceeded with the sequential analysis concluding that

4

the plaintiff was not disabled. The ALJ at step two found that J.M.P. had these severe medically determinable impairments: "bipolar/depression/dysthymic disorder, intermittent explosive disorder, antisocial personality disorder, narcissistic personality disorder, anxiety, alcohol-induced psychotic disorder, and alcohol dependence." ECF# 4-3, p. 16. The claimant's representative argued these mental impairments met the requirements for Listings 12.04 and 12.08. The ALJ, however, found that the severity of the impairments, considered singly and in combination, did "not meet or medically equal the criteria of listings 12.03, 12.04, 12.05, and 12.08." ECF# 4-3, p. 17. Notably, the ALJ did not find from the discussed medical evidence "the presence of objectively discernible medical signs reasonably consistent with a finding that the claimant has a marked or extreme limitation in any of the functional areas that comprise the 'paragraph B' Criteria." *Id*. at p. 18. For each functional area, the ALJ found only a moderate limitation and emphasized from J.M.P.'s testimony "that he is currently, working, is able to live alone, sweeps/vacuums, prepares own meals, has a drivers' license, goes to the store 3 times a week, and used the Internet for email/Facebook." *Id*. The ALJ also concluded the medical evidence did not satisfy the paragraph C criteria.

The ALJ's analysis next moved to the step four assessment of RFC and provided a more detailed evaluation of mental functioning that was consistent with his paragraph B mental function analysis. The ALJ found that J.M.P. had the following RFC:

5

> to perform a full range of work at all exertional levels but with the following
> nonexertional limitations: The claimant is able to carry out detailed but
> uninvolved instructions in the performance of simple, routine and repetitive
> tasks in a low stress work environment with no fast-paced production
> requirements involving simple work-related decisions, and with only occasional
> judgment and work place changes. The claimant can occasionally respond to
> and have interaction with supervisors, coworkers and the general public.

ECF# 4-3, p. 19. The ALJ found "the claimant's medically determinable impairments

could reasonably be expected to cause the alleged symptoms" but that "the

claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in" his decision. ECF# 4-3, pp. 19-20.

      The ALJ then reviewed and summarized the medical evidence of record.

*Id.* at pp. 20-24. He also summarized the testimony received from J.M.P. and his

mother. *Id.* at p. 24. The ALJ then concluded:

> In sum, the above residual functional capacity assessment is supported
> by the medical evidence record, statements of the claimant and the opinion
> evidence. Accordingly, based upon the objective evidence, the claimant's
> course of treatment, their level of daily activity and their work history, I have
> determined that the claimant retains the residual functional capacity for work
> at all exertional levels. However, the claimant's bipolar/depression/dysthymic
> disorder, intermittent explosive disorder, antisocial personality disorder,
> narcissistic personality disorder, anxiety, alcohol-induced psychotic disorder,
> and alcohol dependence cause moderate difficulties with understanding,
> remembering, or applying information; concentration, persistence or maintain
> pace; and adapt and manage oneself that result in limitations, including able to
> carry out detailed but uninvolved instructions in the performance of simple,
> routine and repetitive tasks in a low stress work environment with no fast-
> paced production requirements involving simple work-related decisions, and
> with only occasional judgment and work place changes. Further, the claimant's
> severe mental impairments also cause moderate difficulties with their ability
> to interact with others that result in limitations, including can occasionally
> respond to and have interaction with supervisors, coworkers and the general

public. Weighing all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities. The residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to their allegations of disability.

*Id*. at pp. 24-25. At step four, the ALJ accepted the vocational expert's testimony that the claimant can perform his past "unskilled" work as a tube inspector, as this work did not require him to perform any work-related activities precluded by his RFC. *Id*. at p. 25. Alternatively, the ALJ also found for step five that there are other jobs existing in significant numbers in the national economy that the claimant can perform considering his age, education, work experience and RFC. Thus, the ALJ concluded the claimant was not under a disability from January 14, 2018, through April 8, 2021, the date of the ALJ's decision.

## STATEMENT OF ISSUES

The plaintiff generally challenges the ALJ's determination that the plaintiff's impairments did not meet or equal the requirements of Listing 12.08 (step three) and the ALJ's RFC determination (step four). He summarily argues several points on whether these determinations are consistent with proper legal standards and are supported by substantial evidence. In the argument section of his brief, the plaintiff uses only one heading which he words as this issue: "The ALJ failed to properly evaluate substantial evidence of record at step three of the Commissioner's

7

sequential evaluation process." ECF# 19, p. 34. Under this heading, the plaintiff does not limit his points to the ALJ's findings under step three. Instead, he randomly asserts errors with the ALJ's listing determination at step three and the ALJ's RFC assessment at step four. The court will separate the plaintiff's arguments focusing first on those arguments that seem to exclusively bear on the step three listing determination. For those arguments applying to both steps, the court will address them under the step four RFC finding.

Step Three Determination

The plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter*, 10 Fed. Appx. 665, 667, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in *Zebley*)); *see Watts v. Astrue*, No. 07-4032-SAC, 2008 WL 314377, at *4 (D. Kan. Feb. 4, 2008). "The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listing defines impairments that would prevent an adult, regardless of his age, education or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Zebley*, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a)(1989)); *see Lesley A.H. v. Saul*, No. 19-2509-JWL, 2020 WL 3545626, at *4 (D. Kan. Jun. 30, 2020). "The listings streamline the decision process by identifying those claimants whose medical impairments are so severe that it is

8

likely they would be found disabled regardless of their vocational background." *Lesley A.H.*, 2020 WL 3545626, at *4 (internal quotation marks and citation omitted). "To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). As part of the step three determination of whether the claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listings considered and set out specific findings and reasons for finding whether plaintiff's impairments meet or equal those listings. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996).

The court summarily rejects the plaintiff's general argument that the ALJ failed to evaluate the substantial evidence at step three. The ALJ's decision adequately reflects proper consideration of the applicable listings at step three including the relevant definitions and requirements for each listing. The plaintiff singles out Listing 12.08 for personality and impulse-control disorders. To satisfy this listing, the mental disorder must meet the requirements found in both paragraphs A and B. Paragraph A sets out the medical criteria that must be established by the medical evidence. Paragraph B lays out four functional criteria used in a work setting: understand, remember, or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself. The regulations also explain:

> We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to

9

function independently, appropriately, effectively, and on a sustained basis
(see §§ 404.1520a(c)(2) and 416.920a(c)(2) of this chapter). To satisfy the
paragraph B criteria, your mental disorder must result in "extreme" limitation
of one, or "marked" limitation of two, of the four areas of mental functioning.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The regulations further explain that evidence is

needed to assess the severity and effect of the mental disorder upon the ability to

function in a work setting.

> The ALJ discussed the applicable listings, the paragraph B criteria, and

the definitions involved in rating the limitations. ECF# 4-3, p. 17. He found generally:

The record does not document the claimant have a serious or greater
restriction in his ability to perform routine activities of daily living such as
cleaning, shopping, cooking, paying bills, and caring for grooming and hygiene.
Similarly, the medical evidence discussed below fails to document the presence
of objectively discernible medical signs reasonably consistent with a finding
that the claimant has a marked or extreme limitation in any of the functional
areas that comprise the "paragraph B" criteria.

ECF# 4-3, pp. 17-18. The ALJ meaningfully discussed each of the four functional areas

finding no more than a moderate limitation and keying on the claimant's

demonstrated abilities, his daily living activities, and his own testimony about his

regular activities in working, using the internet, going to school, and staying informed

about music, sports, email, and Facebook. ECF# 4-3, p. 18.

> The ALJ also discussed "paragraph C criteria." *Id*. The plaintiff points

out that the ALJ erroneously includes listing 12.08 in his discussion of "paragraph C

criteria" when this listing has no requirement of paragraph C criteria. The plaintiff

does not explain how this error requires reversal and remand here. The ALJ already

determined that the plaintiff's "mental impairments do not cause at least two

10

'marked' limitations or one 'extreme' limitation" as to meet the "paragraph B" criteria under listing 12.08. ECF# 4-3, p. 18. The court finds no reversible error in the ALJ's mistaken inclusion of listing 12.08 in the paragraph C criteria finding.

The plaintiff next focuses on the medical source statement from Anucia Joseph, APRD, who described the plaintiff as having extreme losses in understanding and remembering detailed instructions, working in coordination with or proximity to others without undue distraction, and in completing a normal workday or workweek without interruptions from psychologically based symptoms. ECF# 4-9, p. 235. Joseph also checked under the category of functional limitations a marked limitation in maintaining social functioning and checked "often" as to deficiencies with concentration and persistence or pace in timely completing work tasks. *Id*. at p. 236. The ALJ expressly considered and discussed this medical source statement from Joseph:

> Anucia Joseph APRN noted in (Exhibit 12F) that the claimant had moderate, marked and extreme limitation, was able to manage benefits and would be absent 3 days a month. The medical record shows severe mental impairments that limit, but this opinion is internally inconsistent in that said moderate restrictions in social and noted marked later on. In addition, marked/extreme limits and absent 3 days not supported by the medical record including mental health visits, mental status exams and activities. Further limitations not supported by the medical record including the testimony of the claimant that he is currently working, able to live alone, sweeps/vacuums/prepares own meals, has driver's license, goes to store 3 times a week, reads newspaper, sports/sports illustrated/some books, and uses the internet to browse for schools/music/sports/email and Facebook. The opinion is partially persuasive.

ECF# 4-3, p. 24. In response to this finding, the plaintiff advances this single-sentence argument: "Although, the ALJ alleges that Anucia Joseph's opinion is not supported by

11

the medical record, he does not identify what specific parts of the medical record he is considering." ECF# 19, p. 39.

The ALJ's decision shows he reviewed and considered Joseph's opinions but found them internally inconsistent and not supported with other record evidence, medical and non-medical. The ALJ inferred an internal inconsistency in that Joseph checked only moderate losses for accepting instructions and responding to supervisors' criticism, getting along with coworkers without undue distraction or extreme behavior, and maintaining socially appropriate behavior. ECF# 4-9, p. 236. But in the same report, Joseph later opines that plaintiff has a marked limitation with difficulties in maintaining social function. *Id.* The record sustains this finding of internal inconsistency.

The ALJ's decision also shows he considered the supportability of other medical evidence and found Joseph's opinion to be partially persuasive. By doing so, the ALJ complied with the requirement to "articulate ... how persuasive" he found "all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b); 20 C.F.R. § 416.920c(b). He explained how he considered the most important factors—the "supportability" and "consistency" factors—in evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). Thus, the ALJ followed the law, and his decision shows it is supported by substantial evidence. After making a detailed review of the plaintiff's mental health records, the ALJ summarized his impressions and found:

Mental Health records noted that the claimant was not receptive to case management and only attended when required thru the court. The claimant asked on several occasions to transfer to medication management only. Records noted that the claimant remarked that his medication "generally worked." However, the claimant was not always consistent with medication. When off medication, symptoms increased. The claimant also reported anger issues but stated he was able to control the condition. Mental status examinations in 2019 were essentially normal. Specifically, the claimant denied anxiety, hallucinations or suicidal or homicidal ideation. The claimant did have some limited insight and judgment. In 2020, the claimant struggled with increased symptoms and his probation officer ordered him to resume case management. In March 2020, the claimant had a manic episode and presented to KU MED but he was not admitted. (Exhibit 9F/13. In August 2020, the claimant struggled with anger, irritability, and aggression. By October 2020, information in his mental status examination revealed the claimant was oriented with linear thought processes and intact judgment. The claimant denied hallucinations and insight and judgment was fair (Exhibit 9F/8).

In terms of daily activities, claimant is able to perform a wide range of multi-step activities including self-care, meal preparation and general housekeeping tasks. The claimant is also able to drive, go out alone, shop in stores, manage money and pay bills. The claimant also noted attending college classes and making good grades.

. . . .

The claimant has also worked at the substantial gainful level in 2019 and 2020 (Exhibit 9D). At the hearing, the claimant testified he was currently working at Flowers Foods since February 2021, working 40 hours a week at $17.77 an hour, which is above the substantial amount. The claimant's work history reveals that the claimant is not totally disabled.

The claimant has no severe or extreme functional limitations. Based on the evidence, there is no indication if the claimant takes medication as directed that he would be unable to perform work as noted in the residual functional capacity finding.

I have considered the opinion of the State agency psychological consultants who opined the claimant had moderate functional limitations in all areas aside from adapting which was mild. . . . The medical records do show repetitive instead of 1-2 step instructions due to severe psychologically medically determined impairments. Further limitations are not supported by medical record including the testimony of the claimant that he is currently working, able to live alone, sweeps/vacuums, prepares own meals, has driver's license, goes to store 3 times a week, reads newspaper, sports/sports illustrated/some books, and uses the internet to browse for schools/music/sports/email and Facebook. Therefore, I find the opinions partially persuasive.

13

ECF# 4-3, pp. 22-23. The medical records summarized in these findings and the impressions drawn by the ALJ adequately demonstrate his thinking and show the records he relied upon in concluding that the medical record did not support the extreme/marked limitations included in Joseph's medical source statement. The plaintiff does not otherwise challenge the record supporting these findings and impressions. The court is satisfied that substantial evidence in the record supports the same as well as the ALJ's RFC determination.

Step Four Determination

"It is the ALJ's job to determine the claimant's RFC based on the evidence in the record." *Terwilliger v. Commr., Soc. Sec. Administration*, 801 Fed. Appx. 614, 628 (10th Cir. 2020) (unpub.) (citation omitted). The ALJ is required to assess a claimant's "RFC based on all relevant evidence in the record." *Racette v. Berryhill*, 734 Fed. Appx. 592, 599 (10th Cir. 2018).   "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (citations omitted).

The plaintiff is critical of the ALJ's finding that there was "a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities." ECF# 19, p. 34. The plaintiff argues such a finding contradicts

the ALJ's duty to develop the record and to contact the claimant's medical sources when the record is inadequate. *Id*. at p. 35. The plaintiff's argument rests on a misreading of the ALJ's decision. Rather than finding that the medical record was so lacking, inadequate, and insufficient as to determine disability, the ALJ reviewed the plaintiff's voluminous medical records and found them lacking in proof of what the plaintiff was alleging. The ALJ's basic obligation is to ensure an adequate record consistent with the argued issues and to be informed about the relevant facts and to know the claimant's version of those facts. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). There is no need to further develop the record when sufficient information exists for the ALJ to make the disability determination. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). Nor does the plaintiff contend that the ALJ failed to include and consider any existing medical records or failed to grant any request for further development of the medical record. The proceedings of record show the ALJ fully accommodated all requests by the plaintiff's counsel to complete the record and to consider all objections to it. The court finds no merit to the plaintiff's argument.

The plaintiff next contends the ALJ did not follow the correct legal standard in evaluating the third-party function report and testimony of his mother and guardian. The ALJ discussed this evidence:

> The claimant's mother testified and submitted a third party report (Exhibit 6E/8E) regarding ability to perform activities. I have considered these statements, but find they are not persuasive because while they observed the claimant's functioning, they are not an acceptable medical source(s) and their

15

statement is based upon casual observation, rather than objective medical examination and testing. Further, it is not more persuasive than the accumulated medical evidence regarding the extent to which the claimant's impairments limit their functional abilities. Additionally, such statements are not binding on the Social Security Administration and are neither inherently valuable nor persuasive. Nevertheless, I have fully considered the supporting evidence these statements when reaching the findings herein (20 CFR 404. 1504, 404.1520b(c), 416.904,416.920b(c)).

ECF# 4-3, p. 24. The plaintiff quotes from the revised regulations governing the evaluation of mental disorders, 20 C.F.R. § Pt. 404, effective January 1, 2017, and highlights that "all relevant evidence about" the mental disorder will be considered including that received from the claimant and from third parties who know him and can speak to his mental disorder. The plaintiff's argument consists of no more than that "it is clear" the ALJ failed to follow the regulatory standards. ECF# 19, p. 37.

The ALJ's evaluation of the reports and testimony from the plaintiff's mother is not contrary to these standards. The ALJ wrote that he considered this evidence and then provided reasons for not finding it persuasive. The court shall take the ALJ at his word absent probative evidence showing otherwise. *Wall*, 561 F.3d at 1070. The gist of the ALJ's credibility finding is that he did not find the mother's observations of the plaintiff's functioning persuasive when placed against the accumulated medical evidence about the plaintiff's limitations. This parallels the ALJ's earlier finding that the claimant's alleged "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." ECF# 4-3, p. 20. As already noted, the ALJ comprehensively discussed the medical evidence and other evidence of record and then set forth his

16

thinking and conclusion that "[b]ased on the evidence, there is no indication if the claimant takes medication as directed that he would be unable to perform work as noted in the residual functional capacity finding." *Id.* at p. 23. As the defendant points out, the ALJ is not required to evaluate nonmedical evidence in the same manner as the medical evidence. see 20 C.F.R. § 1520c(d). The court will accept the ALJ's statement that he considered the mother's statement and testimony. The same evidence that the ALJ discussed as discrediting the claimant's allegations also discredits the mother's observations making any possible error here harmless. *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 736 (10th Cir. 2013) (unpub.); *Johnston v. Kijakazi*, No. 20-CV-01366-PAB, 2022 WL 1439112, at *8 (D. Colo. May 6, 2022). The court finds the ALJ complied with regulatory standards in evaluating the opinions and evidence from nonmedical sources.

Finally, the plaintiff summarily contends the ALJ erred in evaluating the medical evidence by picking and choosing from medical reports only those parts favorable to his decision and by not discussing the uncontroverted evidence upon which he did not rely. Other than stating this contention, the plaintiff does not apply it to the facts of this case. Just as the ALJ is not to pick and choose parts from a medical opinion that are favorable to a finding of non-disability, so he is not to do the same as between different medical reports. *Barnes v. Colvin*, 3 F.Supp.3d 892, 898 (D. Kan. 2014). It is not, however, this court's duty in the first instance to apply this standard to the record and argue how it was not followed. The court's review is

limited to considering only those contentions adequately briefed for review. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); *Kirkpatrick v. Colvin*, 663 Fed. Appx. 646, 649 (10th Cir. 2016) (unpub.) (It's not the court's "obligation to search the record and construct a party's arguments." (citation omitted)). The court sees the plaintiff's general "cherry-picking" contention to be asking for little more than the court to re-weigh the evidence of record. *See Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) ("[I]n making [the substantial evidence] determination, we cannot reweigh the evidence or substitute our judgment for the administrative law judge's."). From its own review of the record on appeal, the court is assured that the ALJ "gave the relevant material due consideration." *Anderson v. Astrue*, 319 Fed. Appx. 712, 721 (10th Cir. 2009).

The court has quoted above lengthy excerpts from the ALJ's decision showing a thorough and meaningful consideration of all medical and non-medical evidence. The ALJ's decision explains his evaluation and weighing of the evidence that resulted in his findings. The ALJ certainly had reason from the record to be impressed with the plaintiff's ability to perform a wide range of daily activities, to have friends, to shop alone, to participate in college courses, to interact with others over social media, and to maintain employment, even at levels of substantial gainful activity, that also required him to work with others. The ALJ observed the plaintiff's severe mental health impairments improved with treatment, particularly medication management, which the medical records confirmed as effective in providing some

18

stability to the plaintiff. The ALJ adequately discussed medical evidence even mentioning that evidence which was not favorable to his finding of non-disability. In summary, the court finds that the ALJ conducted a careful review of the evidence in formulating the claimant's RFC and in explaining his findings consistent with the governing regulatory standards.

It is not enough for the plaintiff to show the record contains some evidence, like the opinions of Joseph, Schemmel and the plaintiff's mother, which could support a finding of disabling mental impairments. Indeed, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084. When the record contains support for both that the mental limitations are severe and that they are not, the ALJ is "entitled to resolve such evidentiary conflicts and did so" here. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (citations omitted). The plaintiff has not established an error in the ALJ's rationale or findings, and the court concludes there is substantial evidence to sustain the ALJ's decision.

IT IS THEREFORE ORDERED that the Commissioner's final decision that the claimant was not disabled through April 8, 2021, the date of the ALJ's decision, is affirmed.

Dated this 23rd day of June, 2022, Topeka, Kansas.


  /s Sam A. Crow
Sam A. Crow, U.S. District Senior Judge